SHERMAN WHITE vs. THE WINNISIMMET COMPANY.

A traveller, who drives his horse and wagon on board a ferry-boat, pays the usual toll for their transportation, selects a place for himself, and retains the custody of his horse, without committing him to the care of the ferryman or his servants, or signifying any wish or purpose so to do, is bound to use ordinary care and diligence in the custody of his horse, to prevent the loss or injury of his

property, by his horse taking fright or becoming restless. If the traveller neglects his duty in this respect, leaving his horse without any oversight, and the horse becomes frightened at the sound of the bell of the boat, springs against the chain stretched across the end of the boat and attached to a hook, insufficient in strength for the purpose for which it is designed, breaks the hook, and throws himself and the wagon overboard, whereby the horse is drowned, and the merchandise in the wagon injured, without any fault on the part of the ferryman, when, by proper care and attention on the part of the traveller, the accident would not probably have occurred, the proprietors of the ferry are not responsible for the loss of the horse and the damage to the merchandise so occasioned.

THIS was an action on the case against the proprietors of a ferry for an injury to the plaintiff's property, occasioned by his horse and loaded wagon falling overboard from one of the defendants' boats, while passing from Boston to Chelsea. The case was submitted without argument by the plaintiff, and was argued by *W. H. Gardiner,* for the defendants. The facts are sufficiently stated in the opinion.

DEWEY, J. To a certain extent, persons keeping and maintaining a ferry are common carriers, and subject to the liabilities attaching to common carriers. It would be so, if a bale of goods or an article of merchandise was delivered by the owner to the agent of a ferry company, to be carried from one place to another for hire. Upon receiving such goods for transportation, the ferry company stipulate to carry them safely, and subject themselves to strict liability for the safe carriage and delivery of such goods; being only exempted for losses occasioned by those acts, which are denominated " acts of God, or of a public enemy." The principle above stated would embrace the case of a horse and wagon received by a ferryman to be transported by him on a ferry-boat, the ferryman accepting the exclusive custody of the same for such purpose, and the owner having, for the time being, surrendered the possession to the ferryman.

But if the traveller uses the ferry-boat as he would a toll bridge, personally driving his horse upon the boat, selecting his position on the same, and himself remaining on the boat; neither putting his horse into the care and custody of the ferryman, nor signifying to him or his servants any wish or purpose to do so; and the only possession and custody, by the ferryman, of the horse and vehicle to which he is attached, is that

which necessarily results from the traveller's driving his horse and wagon, or other vehicle, on board the boat, and paying the ordinary toll for a passage; in such case, the ferry company would not be chargeable with the full liabilities of common carriers of merchandise. The liability in this case would be one of a different character; and if the proprietors of the ferry were chargeable for loss or damage to the property, it would be upon different principles. In reference to persons thus using the ferry, the company have responsible duties to perform; the neglect of which may charge them for the loss of goods and property placed on board their boat, when the loss has been occasioned by their default. It is the duty of a ferry company to provide a good and safe boat, suitable for the business in which they are engaged; and they are required to have all suitable and requisite accommodations for the entry upon, the safe transportation while on board, and the depart-ure from the boat, of all horses and vehicles passing over such ferry. They are required to be provided with all proper and necessary servants and agents requisite for the safe and proper conducting of the business of the ferry, and with all proper and suitable guards and barriers on the boat, for the security of the property thus carried on the boat, and to prevent damage from such casualties as it would naturally be exposed to, though there was ordinary care on the part of the traveller. For neglect of duty in these respects, they may be charged, but the liability is different from that of common carriers. The case of such a traveller, though not entirely similar, much more resembles that of a traveller upon a toll bridge or turn-pike road; who, while he uses the easement of another, yet retains the possession and custody of his horse and wagon. The party, thus driving his own horse upon the boat, and re-taining the custody of him, is bound, like the traveller on the toll bridge or the turnpike road, to use ordinary care and oversight in respect to his horse while on the boat, and if he does not use such ordinary care and oversight in respect to him, and for want thereof, the horse leaps overboard, or re-ceives on the boat some injury, all which might and would have been avoided, if the party had used proper care and dili-

gence, such party must himself bear the loss which has thus been occasioned by his own neglect.

In deciding upon the nature and extent of the liability of ferrymen, and how far they are to be charged as common carriers, regard is to be had to the nature of the employment, and especially to the thing to be transported. This principle is practically applied in the well known distinction relating to the liability of the proprietors of stage coaches and other vehicles, as to the carriage of persons. No person thus carried in a public vehicle can recover damages for an injury to his person, if his own want of ordinary care contributed to the injury. Such carriers are not common carriers, with all the liabilities as such. One reason for the distinction is, that persons thus carried are not and cannot be placed under the same custody and control as bales of goods. Being intelligent beings, and having the power of locomotion, and having the opportunity on the one hand, by their own voluntary acts, of exposing themselves to greater hazard, and on the other of guarding to some extent against perils, the law properly requires a person thus carried to exercise ordinary care and vigilance to avoid exposure to danger; and if this is not exercised, and an injury is sustained, the carrier is not liable therefor.

The same principle is also further illustrated in the various decisions of the courts, in cases of actions instituted for the purpose of charging the carriers of slaves as common carriers of merchandise. It was successfully, and certainly most properly contended, as to the carriage of slaves, that in those states where slavery is allowed by law, and where slaves are to some purposes treated as chattels, yet as they are human beings, and cannot and ought not to be stowed away and confined like bales of goods, and placed under the absolute control of the carrier, the principle of the common law applicable to common carriers of merchandise could not be applied to the carriers of slaves. This was so held in *Boyce* v. *Anderson*, 2 Pet. 150; *Clark* v. *McDonald*, 4 McCord, 223.

As having some bearing also on this question, we may allude to the modification of the principle of general liability as common carriers, in those cases where the owner of goods

accompanies them in their transit, retaining a certain control over them, as in *Brind* v. *Dale,* 8 Car. & P. 207, where it was held, that if the owner of goods accompanies them to take care of them, and is himself guilty of negligence, he is not entitled to recover. This case also affirms, as a rule of law, a principle often found elsewhere, and which bears directly, as we think, upon the case before us, "that a party cannot recover, if his own negligence was as much the cause of the loss as that of the defendant."

Thus we perceive that a modification of the liability attached to common carriers occurs, as the nature of the thing to be carried, and the extent of the custody and control over it, by the carrier, varies. We think that the propriety of such a modification of what is certainly a very stringent rule of liability, in reference to cases where the entire custody and control of the property is not with the carrier, is quite obvious.

The case of a traveller conveyed by means of a ferry-boat, where the traveller enters upon the boat driving his horse attached to a wagon, or other vehicle, selecting his own place upon the boat, and continuing to retain under his own custody his horse and wagon, neither committing it to the care of the ferryman or his servants, or signifying any wish or purpose so to do, presents another instance where the liability of the carrier must be considered as of a restricted character; and, as in the case of a carrier of persons, duties devolve upon the traveller, and he is bound to use ordinary care and diligence in respect to his horse and vehicle, in order to prevent, as far as he can, by such care, any injury occurring from fright, or from other cause immediately resulting from the movements of the horse. When such horse or other animal is not surrendered into the custody of the ferryman, the driver is bound to do all that can be effected by reasonable diligence and supervision, to prevent a loss of his property occasioned by his horse becoming restless or affrighted. If the traveller wholly neglects his duty in this respect, leaving his horse without any oversight, and the horse, without the fault of the ferryman, becomes affrighted and throws himself and the ve-

hicle to which he is attached overboard, when, by proper care and attention of the driver, this casualty would in all reasonable probability have been avoided, the loss must fall upon the traveller.

This case is to be decided by the application of these principles to the agreed facts stated by the parties.

These, briefly stated, are as follows :   The defendants keep and maintain a ferry between Boston and Chelsea, and the plaintiff, travelling with his horse and wagon loaded with merchandise, drove the horse and wagon upon the ferry-boat of the defendants, paying the usual toll for his horse and wagon. The plaintiff did not occupy the place assigned him by the agent, but selected his own position ; no further objection being made after he had taken it.   He did not commit the charge of the horse and wagon to the particular custody of the servant of the defendants, or express any wish or purpose to do so.   The horse had not been accustomed to pass over upon this ferry-boat.   The plaintiff remained on board the boat, but left his horse and was at some distance from him with no one to have an oversight over him, or to restrain him, if frightened.   In this state of things, the horse became frightened at the ringing of the bell, as the boat approached the shore, and sprang forward, struck the chain thrown across the forward end of the boat, with such force as to cause the hook connected with it to give way, and thereupon the horse and wagon went overboard.   The horse was drowned, and the merchandise in the wagon greatly injured.

The facts, as stated, also show that the iron hook, by which the chain was fastened, was defective and insufficient in strength for the purposes it was designed to answer; though the defendants and their agent had no knowledge of that fact. This defect was one for which the defendants were answerable, and which, under other circumstances, might have charged them with the loss.   But, unfortunately for the plaintiff, the facts also show a want of ordinary care and diligence on his part, in the oversight and care of his horse, and that, by want of such care and oversight, this loss was in all probability occasioned.

Every person is bound to use reasonable care to prevent damage to his property, and if the injury is attributable to himself in part, he cannot recover, although there may have been negligence on the part of the other party also. This doctrine is fully sustained by the case of *Smith* v. *Smith*, 2 Pick. 621, and by 2 Greenl. on Ev. § § 220, 473, and cases there cited. The court are of opinion that, upon this ground, there must be *Judgment for the defendants.*